Exhibit $\underline{17}$

**WGI Warren George Inc.**

SUBSURFACE EXPLORATION

| | |
|---|---|
| JOB LOCATION | SHEET 1 OF 1 |
| BOWLING GREEN | LOCATION HEMPSTEAD, L.I. |
| | HOLE NO. B-1 |
| L. 95191 | LINE & STA |
| FOR: DVIRKA & BARTILUCCI | OFFSET |

| | | | |
|---|---|---|---|
| DRIVE ___ CASING OUT DATE ___ | DATE START 6-12-95 | GROUND ELEVATION ___ |
| DEPTH ___ ALL CASING OUT DATE ___ | DATE FINISH 6-12-95 | GROUND WATER ELEVATION ___ |

| | | | | |
|---|---|---|---|---|
| CASING 4" D ___ | WEIGHT OF HAMMER 300-140 LBS | HAMMER FALL |
| SAMPLER 2" D ___ | INSIDE LENGTH OF SAMPLER 24 IN | CASING 24" SAMPLER 30" |
| DIAMOND BIT SIZE | | |

| CASING BLOWS PER FOOT | SAMPLE NUMBER | SAMPLE DEPTHS ELEV. / FEET | SAMPLE RECOVERY | BLOWS PER 6 ON SAMPLER | | | | DENSITY OR CONSIST. MOISTURE | PROFILE CHANGE DEPTH | FIELD IDENTIFICATION OF SOIL |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 0-6 | 6-12 | 12-18 | 18-24 | | | |
| 0 | | | | | | | | | 0'– 6" | BLACKTOP AND GRAVEL |
| | 1 | 6"-2'6" | | 17 | 31 | 21 | 18 | | | |
| | | | | | | | | | | BLACK BROWN SAND, GRAVEL |
| | | | | | | | | | 6' | |
| | 2 | 5'-7' | | 3 | 27 | 39 | 57 | | | |
| 10 | | | | | | | | | | |
| | 3 | 10'-12' | | 27 | 31 | 43 | 32 | | | |
| | | | | | | | | | | BROWN SAND, GRAVEL |
| | 4 | 15'-17' | | 24 | 32 | 35 | 39 | | | |
| 20 | | | | | | | | | | |
| | 5 | 20'-22' | | 36 | 40 | 41 | 46 | | | |
| | 6 | 25'-27' | | 26 | 32 | 29 | 35 | | | |
| 30 | | | | | | | | | | |
| | 7 | 30'-32' | | 21 | 27 | 43 | 49 | | 32' | |
| | | | | | | | | | | END OF HOLE 32' |
| 40 | | | | | | | | | | |

| | |
|---|---|
| Soil Engineer ___ | Driller ERNEST THOMAS |
| Drilling Inspector ___ | Helper DESMOND WILLIAMS |

| CORPORATION | | | | SHEET 1 OF 1 |
| BOWLING GREEN | **WGI** Warren George Inc. | | | LOCATION HEMPSTEAD, L.I. |
| | | | | HOLE NO. B-2 |
| | SUBSURFACE EXPLORATION | | | LINE & STA |
| L. 95191 | FOR DVIRKA & BARTILUCCI | | | OFFSET |

| | | | | DATE START 6-13-95 | GROUND ELEVATION |
| | | | | DATE FINISH 6-13-95 | GROUND WATER ELEVATION |

| CASING O.D. 4" | | | WEIGHT OF HAMMER 300-140 lbs | HAMMER FALL |
| SAMPLER O.D. 2" | | ID | INSIDE LENGTH OF SAMPLER 24 in | CASING 24" SAMPLER 30" |
| DIAMOND BIT SIZE | | | | |

| CASING BLOWS PER FOOT | SAMPLE NUMBER | SAMPLE DEPTHS ELEV. / FEET | SAMPLE RECOVERY | BLOWS PER 6 ON SAMPLER | | | | DENSITY OR CONSIST. MOISTURE | PROFILE CHANGE DEPTH | FIELD IDENTIFICATION OF SOIL |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 0-6 | 6-12 | 12-18 | 18-24 | | | |
| | 1 | 0'-2' | | 7 | 5 | 11 | 12 | | 0'- | FILL |
| | | | | | | | | | 5' | |
| | 2 | 5'-7' | | 7 | 9 | 11 | 10 | | | |
| | 3 | 10'-12' | | 23 | 31 | 34 | 34 | | | LIGHT BROWN SAND, GRAVEL |
| | 4 | 15'-17' | | 39 | 61 | 42 | 39 | | | |
| | 5 | 20'-22' | | 12 | 27 | 29 | 31 | | 24' | RED BROWN SAND, GRAVEL |
| | 6 | 25'-27' | | 31 | 29 | 32 | 38 | | 28' | |
| | 7 | 30'-32' | | 29 | 37 | 49 | 67 | | 32' | BROWN SAND, MEDIUM FINE |
| | | | | | | | | | | END OF HOLE 32' |

| Soil Engineer | | Driller: ERNEST THOMAS |
| Drilling Inspector | | Helper: DESMOND WILLIAMS |

| JOB LOCATION | | WGI Warren George Inc. | | SHEET 1 of 1 |
|---|---|---|---|---|
| BOWLING GREEN | | | | LOCATION HEMPSTEAD, L.I. |
| | | | | HOLE NO. B-3 |
| | | SUBSURFACE EXPLORATION | | LINE & STA. |
| L.95191 | | FOR  DVIRKA & BARTILUCCI | | OFFSET |

| DEPTH _____ of CASING OUT AIR | DATE START 6-12-95 | GROUND ELEVATION _____ |
|---|---|---|
| DEPTH _____ of AIR CASING OUT AIR | DATE FINISH: 6-12-95 | GROUND WATER ELEVATION _____ |

| CASING O.D. 4" ID _____ | WEIGHT OF HAMMER 300-140 LBS. | HAMMER FALL |
|---|---|---|
| SAMPLER O.D. 2" ID _____ | INSIDE LENGTH OF SAMPLER 24 IN. | CASING 24" SAMPLER 30" |
| DIAMOND BIT SIZE | | |

| CASING BLOWS PER FOOT | SAMPLE NUMBER | SAMPLE DEPTHS ELEV. / FEET | SAMPLE RECOVERY | BLOWS PER 6" ON SAMPLER | | | | DENSITY OR CONSIST. MOISTURE | PROFILE CHANGE DEPTH | FIELD IDENTIFICATION OF SOIL |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 0 - 6 | 6 - 12 | 12 - 18 | 18 - 24 | | | |
| | 1 | 6"-2'6" | | 19 | 11 | 15 | 13 | | 0'-6" | BLACKTOP |
| | | | | | | | | | | BLACK BROWN SAND, GRAVEL |
| | 2 | 5'-7' | | 17 | 39 | 42 | 47 | | 7' | |
| | 3 | 10'-12' | | 17 | 22 | 28 | 28 | | | REDDISH BROWN SAND, GRAVEL |
| | 4 | 15'-17' | | 22 | 21 | 37 | 33 | | 17' | |
| | 5 | 20'-22' | | 19 | 23 | 21 | 27 | | | LIGHT BROWN SAND, GRAVEL |
| | 6 | 25'-27' | | 32 | 57 | 51 | 49 | | 27' | |
| | | | | | | | | | | BROWN SAND  MEDIUM FINE, TRACES OF LITTLE GRAVEL |
| | 7 | 30'-32' | | 61 | 82 | 76 | 89 | | 32' | |
| | | | | | | | | | | END OF HOLE 32' |

| Field Engineer _____ | Driller: ERNEST THOAMS |
|---|---|
| Drilling Inspector _____ | Helper: DESMOND WILLIAMS |

# Exhibit 18

cc = John ✓



**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION**
50 Wolf Road, Albany, New York 12233

*Michael D. Zagata*
*Commissioner*

JUN 21 1995

Mr. Gregory P. Peterson
Office of the Presiding Supervisor
Town of Hempstead
1 Washington Street
Hempstead, New York 11550-4923



Dear Mr. Peterson:

                    Re:  New Cassel Industrial Area

        This is in response to your May 23, 1995 letter regarding the impact of contamination from the New Cassel Industrial Area on the Bowling Green Water District wells.

        We have reviewed your request for financial assistance in conjunction with the New York State Department of Health and have determined that the capital costs of the proposed supplemental water treatment system will be eligible for funding under the State Superfund Program.  We have also consulted with the U.S. Environmental Protection Agency on whether it would be eligible for funding under the Federal Superfund Program, and they have indicated verbally that it would not be.

        You are correct when you point out that our February 1995 Site Investigation Report contains no information on the movement of contaminated groundwater away from the industrial area.  This is because the purpose of the site investigation was to locate the sources of the contamination within the industrial area.  Now that most of the sources have been identified, remedial activities will begin early this summer.  This will include interim remedial measures to remove contaminant sources and investigations to determine the full extent of the groundwater contamination.

        Based on the location of the Bowling Green Water District wells and the direction of groundwater flow, it is very likely that the contamination affecting the wells originated at the Tishcon Corporation site (ID #130043E) and/or the Arkwin Industries site (ID #130043D).  Both of these sites have been listed on the Registry of Inactive Hazardous Waste Disposal Sites with classifications of "2" (significant threat confirmed; action required).  Both have been given the highest possible priority for action due to their locations relative to the Bowling Green Water District wells.  The owners of both sites have already entered into Consent Order negotiations with this department.

SSB 000838

Please contact Mr. Alan Rockmore, Director of our Bureau of Construction Services, to initiate the process of funding the supplemental water treatment system. Mr. Rockmore can also arrange for a meeting to discuss the procedures. You can reach him at (518) 457-9280. If you have any questions about our ongoing investigation of the New Cassel Industrial Area, please call Dr. Chittibabu Vasudevan, Chief of our Eastern Projects Section, at (518) 457-1708.

Sincerely,

Michael J. O'Toole, Jr.
Director
Division of Hazardous Waste Remediation

cc:     A. Rockmore
        C. Vasudevan


bcc: M. O'Toole (2)
     C. Goddard
     A. Carlson
     C. Sullivan
     J. Hussey
     R. Cowan
     A. Shah
     S. Ervolina
     E. Barcomb
     J. Swartwout
     D. Harrington
     File

JS/ck

SSB 000839

Exhibit _18_

# DEPARTMENT OF WATER

## TOWN OF HEMPSTEAD

• INTER-DEPARTMENTAL MEMO •

To        :    File

From     :    Daniel Davis, P.E., Commissioner

Date     :    June 28, 1995

Subject :    New Cassel Toxic Waste Site

The writer received a call this date from Jeff Trad, Environmental Engineer II of the New York State Department of Environmental Conservation, telephone number (518-457-1708) who requested information regarding the levels of volatile halogenated organics in the Bowling Green Estates Water District Wells 1 and 2.

J. Trad indicated that he is the project engineer for remediation of the New Cassel Industrial Waste Site, located in Westbury, New York. The reason for his phone call is that he will be meeting with State Legislators tomorrow to brief them on the Department's program and activities for site remediation and this information that will be furnished to him would be helpful. The writer indicated that he would forward information regarding sampling results, going back to the year 1981 from both wells showing the progression of increasing levels of volatile halogenated organics in both wells, as well as information relating to the increase in levels from the discharge of the six granular activated carbon filters on the site of the two wells in question.

Jeff Trad also indicated that in his absence if I should wish to get futher information the writer could contact John Swarthut who will be working with him on the remediation of the New Cassel site.

J. Trad indicated that the remediation efforts will commence with what he called an interim removal action where the State will move in at this time and release contracts for the removal of contaminated soils on the various properties located within the industrial waste site, which although will not remedy the organics already in the groundwater.

As far as further remediation to clean up the groundwater, further samplings of deep monitoring wells both south and north of the New Cassel site will be required. Based on these samplings the New York State Department of Environmental Conservation will be able to determine the type of remediation effort that will be required.

J. Trad indicated that the Department should keep track of all of the expenses associated with the installation of the air stripping tower at the Iris Place Pump Station and at the completion of the project the Department could then advise his office as to the total cost of the stripper.

This expense he indicated would be a refundable expense by the State (not the Federal Government) and that their approach to a payout for this expense is that this is part of the remediation to clean up the groundwater which is basically the use of treatment at the well head.

- 2 -

J. Trad indicated that he was given to understand that the installation would cost about $500,000., the writer indicated at this point in time and until we have all the bids in the Department is looking anywhere from a figure of $500,000 - $750,000, but won't know until all the bids for the contracts are in.

The writer indicated that the bids for General Construction will be opened next week and that it is anticipated that the bids for Mechanical Construction and the erection of a pre-fabricated building will be two weeks hence, and that the Department is hoping to have the air stripper in operation by Labor Day.

If information is to be FAXED to J. Trad's office, the FAX number is 518-457-3972, and he also indicated that his boss if the Department wishes to contact him, is a person named Vasu.

DD:tp

# Exhibit 20

COUNCIL MEMBERS
PATRICK A. ZAGARINO
JOSEPH J. KEARNEY
CURTIS E. FISHER
ANTHONY J. SANTINO
BRUCE A. BLAKEMAN
JOSEPH J. RA

DANIEL M. FISHER, JR.
TOWN CLERK
ANGIE M. CULLIN
RECEIVER OF TAXES

DANIEL DAVIS, P.E.
COMMISSIONER

**TOWN OF HEMPSTEAD**

DEPARTMENT

OF

WATER

1995 PROSPECT AVENUE, EAST MEADOW, N.Y. 11554-3100
(516) 794-8300
FAX# (516) 794-1355

FILE
1293-Q



GREGORY P. PETERSON
PRESIDING SUPERVISOR
RICHARD V. GUARDINO, JR.
SUPERVISOR

July 7, 1995

Region Associates, Inc.
50 Park Avenue
Bay Shore, NY  11706

ATT:  C. Chapman, President

Re:  Packed Tower Aeration System at
Bowling Green Estates Water District
Wells 1 and 2, General Construction
PW 35-95

Dear Sir:

Please be advised that award of the above referenced contract has been recommended to your company in the amount of $118,900.00.  The Hempstead Town Board will act on award of contract on 7/11/95.

You are requested to obtain your Performance Bond, Labor and Materials Bond, Certificate of Workmen's Compensation and Certificates of Insurance, such that you will be able to sign contract documents as soon as possible after 7/11/95.

In the interim, because of the urgency of this project to protect the public water supply of the Bowling Green Estates Water District you are hereby directed to commence work on 7/11/95.

Please call if you have any questions.

Very truly yours,

Daniel Davis, P.E.
Commissioner

DD:tp
cc:  R. Burns, Dvirka & Bartilucci

Exhibit _21_

# REGION ASSOCIATES, INC.

### 50 PARK AVENUE, BAY SHORE, NEW YORK 11706
### 516-666-5691   FAX 516-666-9214

## INVOICE

DATE: JULY 31, 1995

INVOICE NUMBER: 3876

TO:   TOWN OF HEMPSTEAD
      DEPARTMENT OF WATER
      1995 PROSPECT AVENUE
      EAST MEADOW, NY 11554

RE:   CONTRACT PW #35-95

---

THIS  INVOICE  TO  BILL  FOR WORK COMPLETED (25%)  ON  THE  ABOVE
REFERENCED  PROJECT IN ACCORDANCE WITH THE ATTACHED  SCHEDULE  OF
VALUES.

CONTRACT AMOUNT                              $118,900.00

VALUE OF WORK COMPLETED                      $ 29,725.00
LESS 5% RETAINAGE
COMPLETED LESS RETAINAGE                         1,486.25
LESS PREVIOUS REQUISITIONS                   $ 28,238.75
AMOUNT DUE THIS REQUISITION                           .00
                                             $ 28,238.75

authorized builder    STAR BUILDING SYSTEMS



**CLAIM**

DO NOT WRITE IN THIS SPACE

| | |
|---|---|
| ODE NO. | O |

Town of Hempstead, Dr.

CLAIMANT'S FED. I.D. NO. __112697092__

DOR Print Name   REGION ASSOCIATES INC.

DOR Address   50 Park Avenue
Street and Number

   Bay Shore, NY 11706

Town or Village

District or Department   Water Districts

**FUND OR ACCOUNT**

71F-507-7502-5010

Capital Project

Aeration System

8/24/95

Water Interconnection Spo

Recorded By

DATE FILLED

CLAIM NO.

Examined
and
Verified

By

| Purchase Order No. O | Requisition No. 1 | Claimant's Invoice No. 3876 |
|---|---|---|

| Date of Delivery or Service | ITEMIZATION | UNIT PRICE | TOTALS |
|---|---|---|---|
| Year 19 95 | Total Contract Amount | | 118,900.00 |
| | PW 35-95 | | |
| | | | |
| 7/31/95 | Value of Work Completed   (25%) | | 29,725.00 |
| | LESS 5% Retainage | | 1,486.25 |
| | Completed Less Retainage | | 28,238.75 |
| | | | |
| | Less Previous Requisitions | | .00 |
| | Amount Due This Requisition | | 28,238.75 |

Total to be paid:   $28,238 75

Engineer's Approval: W. Mtli   Engineer's Certificate No. O   Dated August 14 19 95

Performance & Insurance Bond   O   Maintenance Bond   O

Resolution No. 759   19 95   Adopted July 11, 19 95

The person signing the following certificate must indicate the title or position held with claimant.

STATE OF NEW YORK
County of Nassau   ss.:

I, C. R. Chapman   do hereby certify that I am the person or   President
(Designate title, or that a partner)

of Region Associates Inc.   , the corporation or co-partnership, making the within claim in the
(Insert full corporate or partnership name)

sum of Twenty Eighty Thousand Two Hundred Thirty Eight Dollars and Seventy Five Cents   Dollars,
that the foregoing voucher and all of the items thereof are true and correct in all respects, that the disbursements and services therein charged have in fact been made and rendered, that no part thereof has been paid or satisfied, that the same is true and justly owing and that taxes from which the Town of Hempstead is exempt are excluded.

Dated, JULY 31   19 95   C. R. Chapman, President
REGION  Associates, Inc.

C. R. Chapman, President
Print or type name of claimant

C M Chapman
Sign name and, if corporate officer or partner, add title

The Above Certificate Must Be Properly Filled Out

STATE OF NEW YORK
COUNTY OF NASSAU   ss.:
TOWN OF HEMPSTEAD

I, the Town Officer of the Town of Hempstead whose action have rise or origin to the above claim hereby approve said claim and certify that the services indicated on the foregoing were actually performed by the person or persons named therein, and the quantities of supplies delivered or required by and for the Town of Hempstead

DANIEL DAVIS P.E., COMM.
WATER DEPARTMENT

JA-23M-1 89-G

I hereby audit and allow this claim for the sum of

$ _____   Fund
and order warrant drawn against fund or account indicated above.

Date _____

Town Comptroller

**TO COMPTROLLERS OFFICE**   8/24/95

# Exhibit 22



COUNCIL MEMBERS
PATRICK A. ZAGARINO
JOSEPH J. KEARNEY
CURTIS E. FISHER
ANTHONY J. SANTINO
JOSEPH J. RA
LINDA REED

DANIEL M. FISHER, JR.
TOWN CLERK

ANGIE M. CULLIN
RECEIVER OF TAXES

DANIEL DAVIS, P.E.
COMMISSIONER

TOWN OF HEMPSTEAD

DEPARTMENT

OF

WATER

1995 PROSPECT AVENUE, EAST MEADOW, N.Y. 11554-3100
(516) 794-8300   FAX# (516) 794-1355



RICHARD V. GUARDINO, JR.
SUPERVISOR

March 23, 1998

New York State Department of Environmental Conservation
Bureau of Construction Services
50 Wolf Road
Albany, NY   12233

ATT:   J. Yavonditte, Environmental Engineer II

> Re:   Municipal Delegation Assistance Agreement
>        Environmental Quality Bond Act of 1986,
>        Iris Place Water Pumping Station
>        Bowling Green Estates Water District
>        Town of Hempstead (T), Nassau County, N.Y.

Dear Sir:

With respect to the above, the Department of Water is enclosing the following project documentation to support the Department's earlier request for 100% reimbursement for the cost of constructing a Packed Tower Aeration System at the above location.

The construction of the subject Packed Tower Aeration System was in response to the impact of organic contaminants emanating from the New Castle Industrial Area (NCIA) on the two public supply wells located at the water district's Iris Place Water Pumping Station in Westbury.   The New Castle Industrial Area has been classified by the State as a Class 2 Inactive Hazardous Waste Disposal Site.

This request is being put forth in conformance with R.C. Knizek's letter of 11/28/95, Town Board Resolution No. 63-1996, Case No. 18911, Adopted 1/23/96 and titled.

> "Resolution Providing for the Town of Hempstead to Enter
> into a New York State Superfund Contract Pursuant to the
> Environmental Quality Bond Act of 1986".

and the completion and placing into operation of the subject Packed Tower Aeration System in 1997.   Copies of R. C. Knizek's letter and Town Board Resolution No. 63-1996 are enclosed and referred to as EXHIBIT I.

The enclosed project documentation is as follows:

EXHIBIT II

Copies of paid claims for four capital construction contracts which includes general construction, mechanical, electrical and site work.   The total cost of these four contracts is $649,143.   All four contracts were competively bid, with award to the low bidder.   Also included are related Town Board Resolutions and Nassau County Health Department Approval of Completed Works (Gen. 219).   A summary sheet detailing the four capital construction contracts has been provided and is included as part of EXHIBIT II.

SAD 036894

- 2 -

EXHIBIT III

Copies of descriptive portions of Contract specifications for each of the four
capital construction contracts are included in EXHIBIT III.   Copies of complete
contract specifications and signed contract documents are available upon request
to the Department of Water.

EXHIBIT IV

Six sets of Nassau County Department of Health approved drawings of the Packed
Tower Aeration System covering the four capital construction contracts are included
in EXHIBIT IV and are as follows:

| | |
|---|---|
| PW 35-95 | General Construction |
| PW 41-95 | Mechanical |
| PW 42-95 | Electrical |
| PW 13-97 | Site Work |

Additional sets of drawings if required, will be furnished upon request to the
Department of Water.

EXHIBIT V

Copies of Town of Hempstead Department of Water purchase orders and corresponding
paid claim sheets for various key pieces of equipment used in the construction of the
Packed Tower Aeration System are included in EXHIBIT V.   The purchase in advance
of this equipment by the Department of Water was done to fast track the construction
process in order to have the Packed Tower Aeration System on line as soon as possible.
Competitive bids were received for the above equipment with award being made to the
low bidder.

A detailed summary sheet of the 7 purchase orders as well as paid claims has been
prepared and is included with the above.   The total cost for the purchase of equipment
by the Department of Water and used in the Packed Tower Aeration System is
$382,495.

EXHIBIT VI

Copies of 26 paid claim sheets from the engineering firm of Dvirka & Bartilucci for
engineering services rendered for the preparation of contract drawings and specifications
for the construction of the Iris Place Packed Tower Aeration System.   Also included
in these claims are engineering services for shop drawings approvals, approval of
contractor's claims for payment and on site inspection of constructed works.

Included with these claims for engineering services is a summary sheet of the claim
dates and the amount of each claim.   Also included with the subject claims is a
letter of verification of work performed by the firm of Dvirka & Bartilucci as well
as noting that their engineering fee schedule is that allowed under their New York
State Department of Environmental Conservation standby services contract.

If further information regarding the above claims is required, the firm of Dvirka &
Bartilucci have indicated they will provide whatever further information is requested.

- 3 -

EXHIBIT VII

A summary sheet has been prepared indicating the component costs of construction of the Packed Tower Aeration System and is included in EXHIBIT VII. This cost breakdown indicates the cost of capital contracts, purchase of equipment and engineering services. This summary also provides the engineer's cost estimates for these items as well as actual costs incurred.

Included with information is the engineer's original cost estimate of 12/15/95 indicating an estimated cost of construction of $934,872. However, there was an arithmetic error in addition in this cost estimate which has been corrected and noted in a revised cost estimate dated 3/20/98 which is attached. The corrected engineering cost estimate is $1,057,965.80.

The actual cost of construction for the Packed Tower Aeration System is $1,222,463 as compared to the engineer's estimate of $1,057,960, a difference of $164,497.

It should be noted that construction of the Packed Tower Aeration System at the Iris Place Pump Station involved additional construction costs related to the Iris Place Pump Station site. These include:

▪ Design of the Packed Tower Aeration System was for 2 wells whose combined pumping capacity is 2,400 gallons per minute.

▪ A Packed Tower Aeration System was provided for with a VOC removal capability of 2,000 parts per billion to less then 5 parts per billion. This design provided for a worst case scenerio that might be expected from the toxic waste plumes emanating from the New Castle Industrial Area (NCIA).

▪ A 250 KVA diesel gen set and auto transfer switch for standby service to insure an uninterruptible source of power for the Packed Tower Aeration System should a disruption of LILCO power occur.

▪ Integrating plant piping, instrumentation and safety controls with the existing granular activated carbon filters at the site to provide either a single or dual mode treatment train.

SAD 036896

- 4 -

## SUMMARY

The Department of Water is herein requesting that funds expended for the construction of a Packed Tower Aeration System at the Iris Place Pump Station in the Department's Bowling Green Estates Water District be reimbursed by the State.

This reimbursement would be as provided for under the Environmental Quality Bond Act of 1986 and would be at 100% of construction costs.

The Department of Water on behalf of the Bowling Green Estates Water District is seeking reimbursement for the sum of $1,222,463.00 for which project documentation has been provided herein.

If further information is required or clarification of project documentation submitted, please contact the writer.

Very truly yours,

Daniel Davis, P.E.,
Commissioner

DD:tp
encls.
cc:  Richard V. Guardino, Jr., Supervisor
     David Levy, Special Assistant to the Supervisor

SAD 036897

SEE INSTRUCTIONS ON REVERSE SIDE BEFORE COMPLETING

STATE
OF
NEW YORK

# STANDARD VOUCHER

Voucher No.

| 1 Originating Agency | NYS Department of Environmental Conservation | Orig. Agency Code 09000 | Interest Eligible (Y/N) | 2 P-Contract D301320 |
|---|---|---|---|---|

| Payment Date (MM) (DD) (YY) | OSC Use Only | Liability Date (MM) (DD) (YY) |
|---|---|---|

| 3 Payee ID 116001929 | Additional | Zip Code 11554 | Route | Payee Amount | MIR Date (MM) (DD) (YY) |
|---|---|---|---|---|---|

| 4 Payee Name (Limit to 30 spaces) Town of Hempstead | IRS Code | IRS Amount |
|---|---|---|

| Payee Name (Limit to 30 spaces) | Stat. Type | Statistic | Indicator-Dept. | Indicator-Statewide |
|---|---|---|---|---|

| Address (Limit to 30 spaces) 1 Washington Street | 5 Ref/Inv. No. (Limit to 20 spaces) |
|---|---|

| Address (Limit to 30 spaces) | Ref/Inv. Date (MM) (DD) (YY) |
|---|---|

| City (Limit to 20 spaces) Hempstead, | (Limit to 2 spaces) → | State NY | Zip Code 11550 |
|---|---|---|---|

| 6 Purchase Order No. and Date | Description of Material/Service If items are too numerous to be incorporated into the block below, use Form AC 93 and carry total forward. | Quantity | Unit | Price | Amount |
|---|---|---|---|---|---|

Municipal Delegation Assistance Agreement

Total Design Costs          $   97,448.00

Construction Costs          1,057,965.80

Construction Oversight          59,122.00

Total Eligible Costs          $1,214,535.80


100% Reimbursable Amount          $1,214,535.80

| 7 Payee Certification:
I certify that the above bill is just, true and correct; that no part thereof has been paid except as stated and that the balance is actually due and owing, and that taxes from which the State is exempt are excluded. | Total | $1,214,535. 80 |
|---|---|---|

Payee's Signature in Ink          Supervisor
Title

Date          Town of Hempstead
Name of Company

| | Discount |
|---|---|
| | % |
| | Net |

## FOR AGENCY USE ONLY

| Merchandise Received | I certify that this voucher is correct and just, and payment is approved, and the goods or services rendered or furnished are for use in the performance of the official functions and duties of this agency. |
|---|---|
| Date | |
| Page No. | Authorized Signature |
| By | Date |          Title |

## STATE COMPTROLLER'S PRE-AUDIT

Certified For Payment
of
Net Amount

| Verified | |
|---|---|
| Audited | |
| Special Approval (as Required) | By _____ |

### Expenditure / Liquidation

| Cost Center Code | | | | Object | Accum | | Amount | Orig. Agency | PO/Contract | Line | F/P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dept. | Cost Center Unit | Var | Yr | | Dept. | Statewide | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Check if Continuation form is attached.

OSC

SAD 035909

 

## NEW YORK STATE SUPERFUND
## MUNICIPAL DELEGATION ASSISTANCE AGREEMENT

THIS AGREEMENT, entered into by and between NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION (hereafter referred to as the "DEPARTMENT"), an agency of the government of the State of New York, having its principal offices at 50 Wolf Road, Albany, New York 12233-7010; and the TOWN OF HEMPSTEAD, a municipality (hereafter referred to as the "MUNICIPALITY") having its principal offices at 1 Washington Street, Hempstead, New York 11550-4923.

### WITNESSETH:

WHEREAS, pursuant to Paragraph (a) of Subdivision 1 of Section 27-1313 of the Environmental Conservation Law, the DEPARTMENT is responsible for inactive hazardous waste disposal site remedial programs throughout the State of New York subject only to the limitations of Section 1389-b of the Public Health Law;

WHEREAS, pursuant to Paragraphs (a) and (b) of Subdivision 2 of Section 27-1313 of the Environmental Conservation Law, the DEPARTMENT is authorized to delegate its said responsibility with respect to a specific inactive hazardous waste disposal site to the MUNICIPALITY in which such site is located and contract with any person for the performance of necessary work in connection with inactive hazardous waste disposal sites;

WHEREAS, certain inactive hazardous waste disposal sites, formerly known collectively as the New Cassel Industrial Area Site Number 130043 (hereafter referred to as the "SITE"), and now listed as seven (7) separate sites numbered 130043A through 130043G, is located within the territory of the MUNICIPALITY;

WHEREAS, the MUNICIPALITY has indicated its willingness to assume a portion of the DEPARTMENT's responsibility for the SITE and to perform certain necessary work;

WHEREAS, the MUNICIPALITY has satisfactorily demonstrated to the DEPARTMENT that the MUNICIPALITY possesses the technical expertise required for the proper performance of the necessary work;

WHEREAS, it is in the interest of the people of the State of New York in general and the Town of Hempstead in particular that the necessary work be performed expeditiously;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and conditions contained in this Agreement, the DEPARTMENT and the MUNICIPALITY agree as follows:

1.  The DEPARTMENT agrees to make available to the MUNICIPALITY a sum not to exceed $1,214,536 for the purpose of installing a treatment system on the Bowling Green Water District public drinking water supply as described in the Program

SAD 036826

Narrative (hereafter known as the "PROJECT") which is attached and made part of this agreement. The MUNICIPALITY agrees to:

a.   Hire a qualified consultant to design the treatment system and to oversee the construction of the new service extension.

b.   Procure through competitive bidding a qualified contractor to build the treatment system.

c.   Through the Bowling Green Water District, assume ownership of the treatment system and assure the permanent operation and maintenance of the system.

3.   The term of this agreement shall commence on August 1, 1995 and shall terminate on July 31, 1998.

4.   Eligible expenditures for the project are those made after August 1, 1995 and prior to July 31, 1998 in accordance with Schedule B - Estimated Budget. Payment will not be made for work performed by employees of the MUNICIPALITY or the Bowling Green Water District. Payment for consultant services will be made subject to the following conditions:

a.   The consultant was competitively procured in accordance with the NYSDEC Municipal Assistance Program Hazardous Waste Site Remediation Procurement Handbook.

b.   Indirect costs will be reimbursed at rate of 1.17 or the consultant's actual indirect cost rate, whichever is less.

c.   Profit will be reimbursed at a rate not to exceed 15 percent of the sum of the direct labor plus indirect costs. Prime contractor's profit on subcontracts or subcontract management fees are not eligible for reimbursement.

d.   Direct labor will be reimbursed at the actual rate, not to exceed applicable labor rate ceilings contained in the in the NYSDEC/DHWR Title 3 Cost Eligibility Guidelines (Appendix 3 to the NYSDEC Municipal Assistance Program Hazardous Waste Site Remediation Procurement Handbook).

e.   Non-personal services (e.g. travel, equipment, supplies, etc.) are not eligible for reimbursement.

f.   Payment for eligible consultant costs for design services will be made after award of the construction contract.

SAD 036827

5.  An estimates budget for the Project , labeled "Schedule B - Estimated Budget" is attached to and made a part of this Agreement.  The MUNICIPALITY shall expend funds paid to it under this Agreement in accordance with Schedule B.

6.  Subject to the availability of funding, this agreement may be amended to provide for additional costs, which in the DEPARTMENT's sole discretion are reasonably necessary to complete the project.  Any amendment to this agreement must be approved by the State Comptroller.  The DEPARTMENT will not be responsible for the operation and maintenance of any facility which may be developed or equipment which may be purchased with the funds herein identified.

7.  A sum not to exceed $60,000 shall be advanced to the MUNICIPALITY upon execution and approval of this Agreement to procure the services of a qualified engineering firm to initiate the Project.  The MUNICIPALITY agrees to expend these funds in total accord with the provisions and rules and regulations of the New York State Finance Law and the General Municipal Law.

8.  Payments shall be made upon audit and approval of the State Comptroller (hereafter referred to as the "COMPTROLLER") of vouchers executed by an authorized officer of the MUNICIPALITY.  Any claims for reimbursement shall be accompanied by such receipts and documents verifying expenditures as may be required by the DEPARTMENT  and by the COMPTROLLER.  Vouchers may not be submitted more frequently than once in thirty days.

9.  The MUNICIPALITY shall issue a certificate of completion of the Project  and a final voucher to the DEPARTMENT within 30 days of the completion of said Project  or within 30 days of the expiration of this Agreement.  The DEPARTMENT will conduct a final review of the Project, which may include an on-site inspection, within 60 days of receiving such notice at a time satisfactory to the DEPARTMENT.

10. The MUNICIPALITY shall keep accurate and separate accounting and fiscal records, maintain an efficient and accurate cost keeping system of all receipts and disbursement and all funds attributable to this Agreement.  The MUNICIPALITY shall produce such records for examination at such reasonable time or times as may be designated by the DEPARTMENT and/or the State Comptroller or their duly authorized  representatives.  The MUNICIPALITY shall permit extracts therefrom and copies thereof to be made by the DEPARTMENT or the State Comptroller or their duly authorized representatives.

11. The MUNICIPALITY shall complete the Project as set forth in this Agreement, and failure to render satisfactory progress or complete the project to the satisfaction of the DEPARTMENT may be deemed an abandonment of the Project and cause for the suspension or termination of any obligation to the Department.  In the event the MUNICIPALITY should be deemed to have abandoned the Project for any reason or cause other than a national emergency or an Act of God, all monies paid to the

MUNICIPALITY by the State shall be repaid to the State within one year after such demand. If such monies are not repaid within one year after such demand, the Commissioner of the DEPARTMENT may request the State Comptroller to cause the amount equal to the monies defined herein and paid to the MUNICIPALITY to be withheld from any State assistance provided through the State of New York to which the MUNICIPALITY would otherwise be entitled. This provision shall take precedence over Clause I of Appendix B referred to in Paragraph 16 of this Agreement.

12.   The MUNICIPALITY agrees to indemnify, save and hold harmless the State and the Department in accordance with Clause II of Appendix B, referred to in paragraph 16 of this Agreement.

13.   In the event the monies defined herein are to be used for the development of facilities, the MUNICIPALITY shall comply with all requirements for providing barrier free access for the handicapped as established by Article 4A of the New York State Public Buildings Law and relevant sections of the New York State Uniform Fire Prevention and Building Code.

14.   The MUNICIPALITY shall not at any time sell or convey any property or facility developed pursuant to this Agreement, nor shall the MUNICIPALITY convert such property or facility to any other use other than the public nonsectarian use as specified in the program narrative without the express written authority of the DEPARTMENT.

15.   Facilities developed or equipment purchased pursuant to this Agreement, upon request, shall be made available at any reasonable time for inspection by the DEPARTMENT.

16.   In recognition of State funds made available for the Project, the MUNICIPALITY agrees that any identifying signs will note that this Project is funded by New York State Superfund.

17.   Appendix A, "Standard Clauses for all New York State Contracts" and Appendix B, "Standard Clauses for all New York State Department of Environmental Contracts" are attached to and made a part of this Agreement.

18.   This Agreement shall not take effect until it is approved by the Attorney general and the Comptroller of the State of New York.

19.   The MUNICIPALITY agrees that it will not receive reimbursement from other sources for any expenditures funded under this Agreement.

20.   In aid of the MUNICIPALITY's performance of the necessary work, the DEPARTMENT expressly delegates to the MUNICIPALITY the DEPARTMENT's

SAD 036829

authority conferred pursuant to sections 27-1307 and 27-1309 of the Environmental Conservation Law, and the DEPARTMENT's authority conferred pursuant to sections 3007 and 3012 of the federal Solid Waste Disposal Act [42 USC section 6927, 6933].

21.   Any part of this Agreement may be modified or amended by mutual agreement between the MUNICIPALITY and the DEPARTMENT with approval from the New York State Office of the Budget and the Office of the State Comptroller.

IN WITNESS WHEREOF, the parties have signed this Contract on the day indicated opposite each signature.

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NASSAU         )

By the signature hereunder, the MUNICIPALITY represents that it has the legal status necessary to enter into this contract and that the person signing is authorized to do so as evidenced by the resolution of its legislative body, a certified copy of which is attached to and hereby made a part of this AGREEMENT.

MUNICIPALITY:

Dated: _July  14, 1998_                   By: _____

On this _14_ day of _July_ , ~~1995~~ _1998_, before me personally came _Richard V. Guarding Jr._, to me known, who, being duly sworn, did depose and say that he is the Town Supervisor of the Town of Hempstead, the municipal corporation described in and which executed the foregoing instrument; that he knows the seal of said municipal corporation, that the seal affixed to said instrument is such seal; that it is affixed by authority of the Town Supervisor of said municipal corporation and that he signed his name by such authority.

_Theresa M. Haller_
Notary Public

APPROVED AS TO CONTENT

_____
COMMISSIONER
WATER DEPARTMENT
DATE   7/3/98

THERESA M. HALLER
NOTARY PUBLIC, State of New York
No. 4526141
Qualified in Nassau County
Commission Expires February 28, _1999_

Approved ...as.. to....
_____
Senior Deputy Town Attorney
Dated   7/7   1998

SAD 036830

FOR THE DIVISION

By: _Michael Bloodgood_

Title: _DIR, DER_

Dated: _3/28/2000_

FOR THE DEPARTMENT

By: _Richard Kinder_

Title: DIRECTOR OF MANAGEMENT & BUDGET

Dated: _4/7/00_

Approved as to Form:

By: _____
        Attorney General

Date: _____

Approved:

By: _____
        State Comptroller

Date: _____

APPROVED AS TO FORM
ATTORNEY GENERAL

JUL 2 1 2000

PETER FAVRETTO
ASSOCIATE ATTORNEY

FOR THE DIVISION

By: _Michael A Wiley_

Title: _DIR DER_

Dated: _3/28/2000_

FOR THE DEPARTMENT

By: _Richard P. Bander_

Title: DIRECTOR OF MANAGEMENT & BUDGET

Dated: _4/7/00_

Approved as to Form:

By: _____
        Attorney General

Date: _____

Approved:

By: _____

Date: _____

APPROVED
State Comptroller
DEPT. OF AUDIT & CONTROL

SEP 13 2000

Charlotte E. Breezyear
FOR THE STATE COMPTROLLER

D301320

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION 1986
## ENVIRONMENTAL QUALITY BOND ACT
## MUNICIPAL DELEGATION ASSISTANCE AGREEMENT

### Schedule A : Proposal

State Assistance Contract :          Project 1-30-043

Municipality :          Town of Hempstead

County :          Nassau

**General Purpose :**

The general purpose of this project is to undertake all activities necessary to implement the interim remedial measure as indicated in the Commissioner's Finding of Fact.

**General Scope :**

The general scope of additional work to be accomplished under this Municipal Delegation Assistance Agreement is divided into two stages.  Stage I: Water Treatment System Design; and, Stage II: Construction.

**Stage II :      Remedial Design  (RD)**

The scope of the RD activities will include development of all engineering designs, plans, specifications and contract documents necessary to implement the selected interim remedial action.

**Stage III :      Construction and Construction Oversight of Selected Remedial Action (RA)**

The scope of IRM activities will include all those activities necessary to construct and implement the selected remedial action.  The IRM consists of the installation of the water treatment system on the Bowling Green Estates Water District supply well.

Page 1 of 2                                                   February 3, 1997

SAD 036833

The estimated amended eligible cost for Stage II : Remedial Design (RD) and Stage III : Construction and Construction Oversight of Selected Remedial Action (RD) through Phase 2 construction is $1,214,535.80.

|  | Stage II RD | Stage III RA |
|---|---|---|
| Design Cost Estimate | $97,448 | |
| Construction Cost | | $1,057,965.80 |
| Construction Oversight | | $    59,122 |
| Total Cost | $97,448 | $1,117,087.80 |
| Grant Amount | $97,448 | $1,117,087.80 |

**Estimated Project Schedule**

| Stage : | Time : | Dates : |
|---|---|---|
| Stage II | Completed June 1995 | |
| Stage III | 21 months | July 1995 to October 1997 |

February 3, 1997

SAD 036834

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION 1986
ENVIRONMENTAL QUALITY BOND ACT
MUNICIPAL DELEGATION ASSISTANCE AGREEMENT

### Schedule B : Estimated Budget

| | |
|---|---|
| State Assistance Contract : | Project 1-30-043 |
| Municipality : | Town of Hempstead |
| County : | Nassau |

## Bowling Green Estates Water District
## Interim Redial Measure
## Eligible Remedial Design/Action Costs

### DESIGN

| | |
|---|---|
| Total Estimated Design Costs | $     97,448.00 |
| State's Share | $     97,448.00 |

### Construction

| | |
|---|---|
| Construction Costs | $ 1,057,965.80 |
| State's Share | $ 1,057,965.80 |
| | |
| Construction Oversight | $     59,122.00 |
| | $     59,122.00 |
| | |
| Total Estimated Construction Costs | $1,117,078.80 |
| State's Share | $1,117,087.80 |

### Total Eligible Costs

| | |
|---|---|
| **Total Eligible Costs** | **$1,214,536** (rounded) |
| State's Share | **$1,214,536** |



APPENDIX A
STANDARD CLAUSES FOR ALL
NEW YORK STATE CONTRACTS

The parties to the attached contract, license, lease, amendment or other agreement of any kind (hereinafter, "the contract" or "this contract") agree to be bound by the following clauses which are hereby made a part of the contract (the word "Contractor" herein refers to any party other than the State, whether a contractor, licenser, licensee, lessor, lessee or any other party):

1.  <u>EXECUTORY CLAUSE.</u> In accordance with Section 41 of the State Finance Law, the State shall have no liability under this contract to the Contractor or to anyone else beyond funds appropriated and available for this contract.

2.  <u>NON-ASSIGNMENT CLAUSE.</u> In accordance with Section 138 of the State Finance Law, this contract may not be assigned by the Contractor or its right, title or interest therein assigned, transferred, conveyed, sublet or otherwise disposed of without the previous consent, in writing, of the State and any attempts to assign the contract without the State's written consent are null and void  The Contractor may, however, assign its right to receive payment without the State's prior written consent unless this contract concerns Certificates of Participation pursuant to Article 5-A of the State Finance law.

3.  <u>COMPTROLLER'S APPROVAL</u>  In accordance with Section 112 of the State Finance Law (or, if this contract is with the State University or City University of New York, Section 355 or Section 6218 of the Education Law), if this contract exceeds $10,000 (or the minimum thresholds agreed to by the Office of the State Comptroller for certain S.U.N.Y. and C.U.N.Y. contracts), or if this is an amendment for any amount to a contract which, as so amended, exceeds said statutory amount, or if, by this contract, the State agrees to give something other than money when the value or reasonably estimated value of such consideration exceeds $10,000, it shall not be valid, effective or binding upon the State until it has been approved by the State Comptroller and filed in his office.

4.  <u>WORKERS' COMPENSATION BENEFITS.</u> In accordance with Section 142 of the State Finance Law, this contract shall be void and of no force and effect unless the Contractor shall provide and maintain coverage during the life of this contract for the benefit of such employees as are required to be covered by the provisions of the Workers' Compensation Law.

5.  <u>NON-DISCRIMINATION REQUIREMENTS.</u> In accordance with Article 15 of the Executive Law (also known as the Human Rights Law) and all other State and Federal statutory and constitutional non-discrimination provisions, the Contractor will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, age, disability or marital status. Furthermore, in accordance with Section 220-e of the Labor Law, if this is a contract for the construction, alteration or repair of any public building or public work or for the manufacture, sale or distribution of materials, equipment or supplies, and to the extent that this contract shall be performed within the State of New York, Contractor agrees that neither it nor its subcontractors shall, by reason of race, creed, color, disability, sex, or national origin:  (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract.  If this is a building service contract as defined in Section 230 of the Labor Law, then, in accordance with Section 239 thereof, Contractor agrees that neither it nor its subcontractors shall be reason of race, creed, color, national origin, age, sex, or disability:  (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract.   Contractor is subject to fines of $50.00 per person per day for any violation of Section 220-e or Section 239 as well as possible termination of this contract and forfeiture of all moneys due hereunder for a second or subsequent violation.

6.  <u>WAGE AND HOURS PROVISIONS.</u> If this is a public work contract covered by Article 8 of the Labor Law or a building service contract covered by Article 9 thereof, neither Contractor's employees

SAD 036836

2

nor the employees of its subcontractors may be required or permitted to work more than the number of hours or days stated in said statutes, except as otherwise provided in the Labor law and as set forth in prevailing wage and supplement schedules issued by the State Labor Department.  Furthermore, Contractor and its subcontractors must pay at least the prevailing wage rate and pay or provide the prevailing supplements, including the premium rates for overtime pay, as determined by the State Labor Department in accordance with the Labor Law.

7.  NON-COLLUSIVE  BIDDING REQUIREMENT.  In accordance with Section 139-d of the State Finance Law, if this contract was awarded based upon the submission of bids, Contractor warrants, under penalty of perjury, that its bid was arrived at independently and without collusion aimed at restricting competition.   Contractor further warrants that, at the time Contractor submitted its bid, an authorized and responsible person executed and delivered to the State a non-collusive bidding certification on Contractor's behalf.

8.  INTERNATIONAL BOYCOTT PROHIBITION.  In accordance with Section 220-f of the Labor Law and Section 139-h of the State Finance Law, if this contract exceeds $5,000, the Contractor agrees, as a material condition of the contract, that neither the Contractor nor any substantially owned or affiliated person, firm, partnership or corporation has participated, is participating, or shall participate in an international boycott in violation of the federal Export Administration Act of 1979 (50 USC App. Sections 2401 et seq.) or regulations thereunder. If such Contractor, or any of the aforesaid affiliates of Contractor, is convicted or is otherwise found to have violated said laws or regulations upon the final determination of the United States Commerce Department or any other appropriate agency of the United States subsequent to the contractors execution, such contract, amendment or modification thereto shall be rendered forfeit and void.  The Contractor shall so notify the State Comptroller within five (5) business days of such conviction, determination or disposition of appeal (2NYCRR 105.4).

9.  SET-OFF RIGHTS.  The State shall have all of its common law, equitable and statutory rights of set-off.  These rights shall include, but not be limited to, the State's option to withhold for the purposes of set-off any moneys due to the Contractor under this contract up to any amounts due and owing to the State with regard to this contract, any other contract with any State department or agency, including any contract for a term commencing prior to the term of this contract, plus any amounts due and owing to the State for any other reason including, without  limitation, tax delinquencies, fee delinquencies or monetary penalties relative thereto. The State shall exercise its set-off rights in accordance with normal State practices including, in cases of set-off pursuant to an audit, the finalization of such audit by the State agency, its representatives, or the State Comptroller.

10.  RECORDS.  The Contractor shall establish and maintain complete and accurate books, records, documents, accounts and other evidence directly pertinent to performance under this contract (hereinafter, collectively, "the Records").  The Records must be kept for the balance of the calendar year in which they were made and for six (6) additional years thereafter. The State Comptroller, the Attorney General and any other person or entity authorized to conduct an examination, as well as the agency or agencies involved in this contract, shall have access to the Records during normal business hours at an office of the Contractor within the State of New York or, if no such office is available, at a mutually agreeable and reasonable venue within the State, for the term specified above for the purposes of inspection, auditing and copying. The State shall take reasonable steps to protect from public disclosure any of the Records which are exempt from disclosure under Section 87 of the Public Officers Law (the "Statute") provided that:  (i) the Contractor shall timely inform an appropriate State official, in writing, that said records should not be disclosed; and (ii) said records shall be sufficiently identified; and (iii) designation of said records as exempt under the Statute is reasonable.  Nothing contained herein shall diminish, or in any way adversely affect, the State's right to discovery in any pending or future litigation.

SAD 036837

3

11.  IDENTIFYING INFORMATION AND PRIVACY NOTIFICATION. (a) FEDERAL EMPLOYER IDENTIFICATION NUMBER and/or FEDERAL SOCIAL SECURITY NUMBER. All invoices or New York State standard vouchers submitted for payment for the sale of goods or services or the lease of real or personal property to a New York State agency must include the payee's identification number, i.e., the seller's or lessor's identification number. The number is either the payee's Federal employer identification number or Federal social security number, or both such numbers when the payee has both such numbers. Failure to include this number or numbers may delay payment. Where the payee does not have such number or numbers, the payee, on its invoice or New York State standard voucher, must give the reason or reasons why the payee does not have such number or numbers.

(B)  PRIVACY NOTIFICATION. (1) The authority to request the above personal information from a seller of goods or services or a lessor of real or personal property, and the authority to maintain such information, is found in Section 5 of the State Tax Law. Disclosure of this information by the seller or lessor to the State is mandatory. The principal purpose for which the information is collected is to enable the State to identify those individuals, businesses and others who have been delinquent in filing tax returns or may have understated their tax liabilities and to generally identify persons affected by the taxes administered by the Commissioner of Taxation and Finance. The information will be used for tax administration purpose and for any other purpose authorized by law.

(2)  The personal information is requested by the purchasing unit of the agency contracting to purchase the goods or services or lease "the real or personal property covered by this contract or lease. The information is maintained in New York State's Central Accounting System by the Director of State Accounts, Office of the State Comptroller, AESOB, Albany, New York 12236.

12. EQUAL EMPLOYMENT OPPORTUNITIES FOR MINORITIES AND WOMEN. In accordance with Section 312 of the Executive law, if this contract is: (i) a written agreement or purchase order instrument, providing for a total expenditure in excess of $25,000.00, whereby a contracting agency is committed to expend or does expend funds in return for labor, services, supplies, equipment, materials or any combination of the foregoing, to be performed for, or rendered or furnished to the contracting agency; or (ii) a written agreement in excess of $100,000.00 whereby a contracting agency is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon; or (iii) a written agreement in excess of $100,000.00 whereby the owner of a State assisted housing project is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon for such project, then: (a) The Contractor will not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status, and will undertake or continue existing programs of affirmative action to ensure that minority group members and women are afforded equal employment opportunities without discrimination. Affirmative action shall mean recruitment, employment, job assignment, promotion, upgradings, demotion, transfer, layoff, or termination and rates of pay or other forms of compensation; (b) at the request of the contracting agency, the Contractor shall request each employment agency, labor union, or authorized representative of workers with which it has a collective bargaining or other agreement or understanding, to furnish a written statement that such employment agency, labor union or representative will not discriminate on the basis of race, creed, color, national origin, sex, age, disability or marital status and that such union or representative will affirmatively cooperate in the implementation of the contractor's obligations herein; and (c) the Contractor shall state, in all solicitations or advertisements for employees, that, in the performance of the State contract, all qualified applicants will be afforded equal employment opportunities without discrimination because of race, creed, color, national origin, sex, age, disability or marital status.

Contractor will include the provisions of "a", "b", and "c" above, in every subcontract over $25,000.00 for the construction, demolition, replacement, major repair, renovation, planning or design of real property and improvements thereon (the Work) except where the Work is for the beneficial use of the

SAD 036838

4

Contractor. Section 312 does not apply to: (i) work, goods or services unrelated to this contract; or (ii) employment outside New York State; or (iii) banking services, insurance policies or the sale of securities. The State shall consider compliance by a contractor or subcontractor with the requirements of any federal law concerning equal employment opportunity which effectuates the purpose of this section. The contracting agency shall determine whether the imposition of the requirements of the provisions hereof duplicate or conflict with any such federal law and if such duplication or conflict exists, the contracting agency shall waive the applicability of Section 312 to the extent of such duplication or conflict. Contractor will comply with all duly promulgated and lawful rules and regulations of the Division of Minority and Women's Business Development pertaining hereto.

13. <u>CONFLICTING TERMS</u>. In the event of a conflict between the terms of the contract (including any and all attachments thereto and amendments thereof) and the terms of this Appendix A, the terms of this Appendix A shall control.

14. <u>GOVERNING LAW</u>. This contract shall be governed by the laws of the State of New York except where the Federal supremacy clause requires otherwise.

15. <u>LATE PAYMENT</u>. Timeliness of payment and any interest to be paid to Contractor for late payment shall be governed by Article XI-A of the State Finance Law to the extent required by law.

16. <u>NO ARBITRATION</u>. Disputes involving this contract, including the breach or alleged breach thereof, may not be submitted to binding arbitration (except where statutorily authorized), but must, instead, be heard in a court of competent jurisdiction of the State of New York.

17. <u>SERVICE OF PROCESS</u>. In addition to the methods of service allowed by the State Civil Practice Law & Rules ("CPLR"), Contractor hereby consents to service of process upon it by registered or certified mail, return receipt requested. Service hereunder shall be complete upon Contractor's actual receipt of process or upon the State's receipt of the return thereof by the United States Postal Service as refused or undeliverable. Contractor must promptly notify the State, in writing, of each and every change of address to which service of process can be made. Service by the State to the last known address shall be sufficient. Contractor will have thirty (30) calendar days after service hereunder is complete in which to respond.

18. <u>PROHIBITION ON PURCHASE OF TROPICAL HARDWOODS</u>. The Contractor certifies and warrants that all wood products to be used under this contract award will be in accordance with, but not limited to, the specifications and provisions of State Finance Law §165. (Use of Tropical Hardwoods) which prohibits purchase and use of tropical hardwoods, unless specifically exempted, by the State or any governmental agency or political subdivision or public benefit corporation. Qualification for an exemption under this law will be the responsibility of the contractor to establish to meet with the approval of the State.

In addition, when any portion of this contract involving the use of woods, whether supply or installation, is to be performed by any subcontractor, the prime Contractor will indicate and certify in the submitted bid proposal that the subcontractor has been informed and is in compliance with specifications and provisions regarding use of tropical hardwoods as detailed in §165 State Finance Law. Any such use must meet with the approval of the State, otherwise, the bid may not be considered responsive. Under bidder certifications, proof of qualification for exemption will be the responsibility of the Contractor to meet with the approval of the State.

19. <u>MACBRIDE FAIR EMPLOYMENT PRINCIPLES</u>. In accordance with the MacBride Fair Employment Principles (Chapter 807 of the Laws of 1992), the Contractor hereby stipulates that the Contractor either (a) has no business operations in Northern Ireland, or (b) shall take lawful steps in good faith to conduct any business operations in Northern Ireland in accordance with the MacBride

SAD 036839

5

Fair Employment Principles (as described in Section 165 of the New York State Finance Law), and shall permit independent monitoring of compliance with such principles.

20.  OMNIBUS PROCUREMENT ACT OF 1992.  It is the policy of New York State to maximize opportunities for the participation of New York State business enterprises, including minority and women-owned business enterprises as bidders, subcontractors and suppliers on its procurement contracts.

Information on the availability of New York State subcontractors and suppliers is available from:

NYS Department of Economic Development
Division for Small Business
One Commerce Plaza
Albany, New York 12245

A directory of certified minority and women-owned business enterprises is available from:

NYS Department of Economic Development
Minority and Women's Business Development Division
One Commerce Plaza
Albany, New York 12245

The Omnibus Procurement Act of 1992 requires that by signing this bid proposal or contract, as applicable, Contractors certify that whenever the total bid amount is greater than $1 million:

(a)  The Contractor has made reasonable efforts to encourage the participation of New York State Business Enterprises as suppliers and subcontractors, including certified minority and women-owned business enterprises, on this project, and has retained the documentation of these efforts to be provided upon request to the State;

(b)  The Contractor has complied with the Federal Equal Opportunity Act of 1972 (P.L. 92-261), as amended;

(c)  The Contractor agrees to make reasonable efforts to provide notification to New York State residents of employment opportunities on this project through listing any such positions with the Job Service Division of the New York State Department of Labor, or providing such notification in such manner as is consistent with existing collective bargaining contracts or agreements. The Contractor agrees to document these efforts and to provide said documentation to the State upon request; and

(d)  The Contractor acknowledges notice that the State may seek to obtain offset credits from foreign countries as a result of this contract and agrees to cooperate with the State in these efforts.

21.  RECIPROCITY AND SANCTIONS PROVISIONS. Bidders are hereby notified that if their principal place of business is located in a state that penalizes New York State vendors, and if the goods or services they offer will be substantially produced or performed outside New York State, the Omnibus Procurement Act 1994 amendments (Chapter 684, Laws of 1994) require that they be denied contracts which they would otherwise obtain.  Contact the NYS, Department of Economic Development, Division for Small Business, One Commerce Plaza; Albany New York 12245, for a current list of states subject to this provision.

Revised December 1996

SAD 036840

APPENDIX B
STANDARD CLAUSES FOR ALL
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION
CONTRACTS

The parties to the attached contract, license, lease, amendment or other agreement of any kind (hereinafter "the contract" or "this contract") agree to be bound by the following clauses which are hereby made a part of the contract. The word "Contractor" herein refers to any party to the contract, other than the New York State Department of Environmental Conservation (hereinafter "Department").

I.      The Department shall have the right to postpone, suspend, abandon or terminate this contract, and such actions shall in no event be deemed a breach of contract.     In the event of any termination, postponement, delay, suspension or abandonment, the Contractor shall deliver to the Department all data, reports, plans, or other documentation related to the performance of this contract, including but not limited to guarantees, warranties, as-built plans and shop drawings. In any of these events, the Department shall make settlement with the Contractor upon an equitable basis as determined by the Department which shall fix the value of the work which was performed by the Contractor prior to the postponement, suspension, abandonment or termination of this contract. This clause shall not apply to this contract if the contract contains other provisions applicable to postponement, suspension or termination of the contract.

II.     The Contractor agrees that it will indemnify and save harmless the Department and the State of New York from and against all losses from claims, demands, payments, suits, actions, recoveries and judgments of every nature and description brought or recovered against it by reason of any omission or act of the Contractor, its agents, employees, or Subcontractors in the performance of this contract. The Department and the State of New York may retain such monies from the amount due Contractor as may be necessary to satisfy any claim for damages, costs and the like, which is asserted against the Department and/or the State of New York.

III.    (a) Conflict of Interest.  To the best of the Contractor's knowledge and belief, the Contractor warrants that there are no relevant facts or circumstances which could give rise to an organizational conflict of interest as herein defined, or that the Contractor has disclosed all such relevant information to the Department.

(b) An organizational conflict of interest exists when the nature of the work to be performed under this contract may, without some restriction on future activities, either result in an unfair competitive advantage to the Contractor or impair or appear to impair the Contractor's objectivity in performing the work for the Department.

(c) The Contractor agrees that if an actual, apparent, or potential organizational conflict of interest is discovered at any time after award, whether before or during performance, the Contractor will immediately make a full disclosure in writing to the Department. This disclosure shall include a description of actions which the Contractor has taken or proposes to take, after consultation with the department, to avoid, mitigate, or minimize the actual or potential conflict.

(d) Remedies - The Department may terminate this contract in whole or in part, if it deems such termination necessary to avoid an organizational or personal conflict of interest, or an unauthorized disclosure or information. If the Contractor was aware of a potential conflict of interest prior to award, or discovered an actual or potential conflict after award and did not disclose or misrepresented relevant information to the Department, the Department may terminate the contract, or pursue such other remedies as may be permitted by the terms of Clause I of this Appendix or other applicable provisions of this contract regarding termination.

(e) In addition to the requirements of the above clauses with respect to "Organizational Conflicts of Interest", the following provision with regard to employee personnel performing under this contract shall apply until the earlier of the termination date of the affected employee(s) or the duration of the contract.

The Contractor agrees to notify the Department immediately of any actual, apparent or potential personal conflict of interest with regard to any employee, Subcontractor employee, or consultant working on or having access to information regarding this contract, as soon as Contractor becomes aware of such conflict. A personal conflict of interest is defined as a relationship of any employee, Subcontractor employee, or consultant with an entity that may impair

April 1, 1993                    Page 1 of 6

SAD 036841

or appear to impair the objectivity of the employee, Subcontractor employee, or consultant in performing the contract work. The Department will notify the Contractor of the appropriate action to be taken.

(f) To the extent that the work under this contract requires access to proprietary of confidential business or financial data of other companies, and as long as such data remains proprietary or confidential, the Contractor shall protect such data from unauthorized use and disclosure and agrees not to use it to compete with such companies.

(g) The Contractor shall certify annually that, to the best of the Contractor's knowledge and belief, all actual, apparent or potential conflicts of interest, both personal and organizational, have been reported to the Department. Such certification must be signed by a senior executive of the Contractor and submitted in accordance with instructions provided by the Department. Along with the annual certification, the Contractor shall also submit an update of any changes in the conflict of interest plan submitted with its proposal for this contract. The initial certification shall cover the one-year period from the date of contract award, and all subsequent certifications shall cover successive annual periods thereafter. The certification is to be submitted no later than 45 days after the close of the previous certification period covered.

(h) The Contractor recognizes that employees in performing this contract may have access to data, either provided by the Department or first generated during contract performance, of a sensitive nature which should not be released without Department approval. Therefore, the Contractor agrees to obtain confidentiality agreements from all employees working on requirements under this contract including Subcontractors and consultants. Such agreements shall contain provisions which stipulate that each employee agrees that the employee will not disclose, either in whole or in part, to any entity external to the Department, Department of Health or the New York State Department of Law, any information or data provided by the Department or first generated by the Contractor under this contract, any site-specific cost information, or any enforcement strategy without first obtaining the written permission of the Department. If a contractor, through an employee or otherwise, is subpoenaed to testify or produce documents, which could result in such disclosure, the contractor must provide immediate advance notification to the

Department so that the Department can authorize such disclosure or have the opportunity to take action to prevent such disclosure. Such agreements shall be effective for the life of the contract and for a period of five (5) years after completion of the contract.

(i) The Contractor agrees to insert in each subcontract or consultant agreement placed hereunder (except for subcontracts or consultant agreements for well drilling, fence erecting, plumbing, utility hookups, security guard services, or electrical services) provisions which shall conform substantially to the language of this clause, including this paragraph (i), unless otherwise authorized by the Department.

If this is a contract for work related to action at an inactive hazardous waste site, the following paragraph shall apply:

(j) Due to the scope and nature of this contract, the Contractor shall observe the following restrictions on future hazardous waste site contracting for the duration of the contract.

(1) The Contractor will be ineligible to enter into a contract for remedial action projects for which the Contractor has developed the statement of work or the solicitation package.

(2) The Contractor, during the life of the work assignment and for a period of five (5) years after the completion of the work assignment, agrees not to enter into a contract with or to represent any party with respect to any work relating to remedial activities or work pertaining to a site where the Contractor previously performed work for the Department under this contract without the prior written approval of the Department.

(3) The Contractor agrees in advance that it any bids/proposals are submitted for any work for a third party that would require written approval of the Department prior to entering into a contract because of the restrictions of this clause, then the bids/proposals are submitted to the Contractor's own risk, and no claim shall be made against the Department to recover bid/proposal costs as a direct cost whether the request for authorization to enter into the contract is denied or approved.

IV.    All requests for payment by the Contractor must be submitted on forms supplied and approved by

April 1, 1993                    Page 2 of 6

SAD 036842

the Department. Each payment request must contain such items of information and supporting documentation as are required by the Department, and shall be all-inclusive for the period of time covered by the payment request.

V.     To the extent that federal funds are provided to the Contractor or used in paying the Contractor under this contract, the Contractor agrees that it will comply with all applicable federal laws and regulations, including but not limited to those laws and regulations which the federal funds were authorized.     The Contractor further agrees to insert in any subcontract hereunder, provisions which shall conform substantially to the language of this clause, including this paragraph.

VI.     The Contractor shall have the status of an independent contractor. Accordingly, the Contractor agrees that it will conduct itself in a manner consistent with such status, and that it will neither hold itself out as, nor claim to be, an officer or employee of the Department by reason of this contract. It further agrees that it will not make any claim, demand or application to the Department for any right or privilege applicable to an officer or employee of the Department, including but not limited to worker's compensation coverage, unemployment insurance benefits, social security coverage, or retirement membership or credit.

VII.     The terms contained in this clause shall have the definitions as given in, and shall be construed according to the intent of Article 15-A of the Executive Law, 9 NYCRR Part 540, et. seq., Article 52 of the Environmental Conservation Law and 6 NYCRR Part 615, et. seq., as applicable, and any goals established by this clause are subject to the intent of such laws and regulations.

(a)  If the maximum contract price herein equals or exceeds $25,000, and this contract is for labor, services, supplies, equipment, or materials; or

If the maximum contract price herein equals or exceeds $100,000 and this contract is for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon;

The affirmative action provisions and equal employment opportunity provisions contained in this paragraph and paragraphs b-f of this clause shall be applicable within the limitations established by Executive Law §§312 and 313 and the applicable regulations.

(1) The Contractor is requested to make good faith efforts to subcontract at least __15__% of the dollar value of this contract to Minority Owned Business Enterprises (MBEs) and at least __5__% of such value to Women Owned Business Enterprises (WBEs).

(2) The Contractor is requested to make good faith efforts to employ or contractually require any Subcontractor with whom it contracts to make good faith efforts to employ minority group members for at least 10% of, and women for at least 10% of, the workforce hours required to perform the work under this contract.

(3) The Contractor is requested to make good faith efforts to solicit the meaningful participation by enterprises identified in the NYS Directory of Certified Businesses provided by the Governor's Office of Minority and Women's Business Development.

(b) The Contractor agrees to include the provisions set forth in paragraph (a) above and paragraphs (a), (b), and (c) of clause 12 of Appendix A in every subcontract in such a manner that the provisions will be binding upon each Subcontractor as to work under such subcontract. For the purpose of this paragraph, a "subcontract" shall mean an agreement providing for a total expenditure in excess of $25,000 for the construction, demolition, replacement, major repair, renovation, planning or design of real property and improvements thereon in which a portion of the Contractor's obligation under a State contract is undertaken or assumed.

(c) The Contractor is requested to make good faith efforts to utilize the MBE/WBEs identified in the utilization plan to the extent indicated in such plan, and otherwise to implement it according to its terms. The Contractor is requested to report on such implementation periodically as provided by the contract, or annually, whichever is more frequent. The Contractor also agrees to incorporate into any contract with Subcontractors, provisions applicable to recordkeeping, reporting, notice requirements and actions suggested by the Department to implement the

April 1, 1993                    Page 3 of 6

SAD 036843

utilization plan, and the intent of the Executive Law Article 15-A, the regulations promulgated thereunder, and other applicable law and regulations.

(d) The Contractor hereby agrees to comply with the intent of the applicable provisions of Executive Law Article 15-A and the regulations promulgated thereunder. Executive Law §§312 and 316 are hereby incorporated by reference.

VIII.    Prior to the commencement of any work under this contract, the Contractor is required to meet all legal requirements necessary in the performance of the contract. This includes but is not limited to compliance with all applicable federal, state and local laws and regulations promulgated thereunder.    It is the Contractor's responsibility to obtain any necessary permits, or other authorizations.    By signing this contract, the Contractor affirmatively represents that it has complied with said laws, unless it advises the Department otherwise, in writing.    The Department signs this contract in reliance upon this representation.

During the term of this contract, and any extensions thereof, the Contractor must remain in compliance with said laws.  A failure to notify the Department of noncompliance of which the Contractor was or should have been aware, may be considered a material breach of this contract.

IX.    The following steps, or as many as are necessary to resolve the dispute between the Department and the Contractor, are prescribed.

The Contractor specifically agrees to submit, in the first instance, any dispute relating to this contract to the designated individual, who shall render a written decision and furnish a copy thereof to the Contractor and the Department. The Contractor must request such decision in writing no more than fifteen days after it knew or should have known of the facts which are the basis of the dispute. The decision of the designated individual shall be final and conclusive unless the Contractor files a written appeal of that decision with the designated appeal individual within twenty days of receipt of that decision.

The designated appeal individual shall review the record and the decision and confirm or reverse the initial decision in writing, in accordance with the divisional contract resolution procedures in effect at that time.

April 1, 1993

The decision of the designated appeal individual shall be final and conclusive unless the Contractor files a written appeal of that decision with the Chair of the Contract Review Committee within twenty days of receipt of that decision.

The designated individual to hear disputes is:

H. Richard Koelling, Dir of Constr. Services
(Name and Title)
NYSDEC Div. of Environmental Remediation
50 Wolf Rd. Albany, NY 12233-7010
(Address)

(518) 457-9280
(Telephone)

The designated appeal individual to review decisions made regarding disputes is:

Thomas Quinn, Assistant Director
(Name and Title)
NYSDEC Div. of Environmental Remediation
50 Wolf Rd. Albany, NY 12233-7010
(Address)

(518) 457-0730
(Telephone)

The Chair of the Contract Review Committee is:

Department of Environmental Conservation
Richard K. Randles, Chair
Contract Review Committee
50 Wolf Road, Room 674
Albany, NY 12233-5010
Telephone: (518) 457-1141

The Chair of the Contract Review Committee shall convene a fact-finding proceeding in accordance with the Committee's established contract dispute resolution guidelines. The proceeding will provide the Contractor with an opportunity to be heard and to submit additional written support of its position. The Committee shall make a recommendation to the Division Director who shall render the agency determination, subject to the final approval of the Deputy Commissioner for Administration.

This decision shall be subject to review only pursuant to Article 78 of the Civil Practice Law and Rules. Pending final determination of a dispute

SAD 036844

hereunder, the Contractor shall proceed diligently with the performance of the contract in accordance with the decision of the designated individual. Nothing in this contract shall be construed as making final the decision of any administrative officer upon a question of law.

Notwithstanding the foregoing, the following shall be subject to review by the Contract Review Committee, at the option of the Contractor: Disputes arising under Article 15-A of the Executive Law (Minority and Women Owned Business participation), the Department's determination with respect to the adequacy of the Contractor's Utilization Plan, or the Contractor's showing of good faith efforts to comply therewith. A request for a hearing before the Committee should be made, in writing, within twenty days of receipt of the Department's determination.

The Committee will promptly convene a hearing in accordance with Article 15-A of the Executive Law and the regulations promulgated thereunder.

The decision of the Deputy Commissioner for Administration shall be a final agency determination, reviewable in accordance with said Article 78 of the Civil Practice Law and Rules.

X.       (a) When appropriate, the Contractor shall post, in a location designated by the Department, a copy of the New York State Department of Labor schedules of prevailing wages and supplements for this project, a copy of all re-determinations of such schedules for the project, the Workers' Compensation Law Section 51 notice, all other notices required by law to be posted at the site, the Department of Labor notice that this project is a public work project on which each worker is entitled to receive the prevailing wages and supplements for their occupation, and all other notices which the Department directs the Contractor to post. The Contractor shall provide a surface for such notices which is satisfactory to the Department. The Contractor shall maintain such notices in a legible manner and shall replace any notice or schedule which is damaged, defaced, illegible or removed for any reason. Contractor shall post such notices before commencing any work on the site and shall maintain such notices until all work on the site is complete.

(b) When appropriate, Contractor shall distribute to each worker for this contract a notice, in a form provided by the Department, that this project is a public work project on which each worker is entitled to receive the prevailing wage and supplements for the occupation at which he or she is working. Worker includes employees of Contractor and all Subcontractors and all employees of suppliers entering the site. Such notice shall be distributed to each worker before they start performing any work of this contract. At the time of distribution, Contractor shall have each worker sign a statement, in a form provided by the Department, certifying that the worker has received the notice required by this section, which signed statement shall be maintained with the payroll records required by the following paragraph (c).

(c) Contractor shall maintain on the site the original certified payrolls or certified transcripts thereof which Contractor and all of its Subcontractors are required to maintain pursuant to the New York Labor Law §220. Contractor shall maintain with the payrolls or transcripts thereof, the statements signed by each worker pursuant to paragraph (b).

XI.       In accordance with State Law (Chapter 55 of the Laws of 1992), the Department has the authority to administratively offset any monies due it from the Contractor, from payments due to the Contractor under this contract.

XII.       The Contractor agrees that if selected as the lowest bidder, the Contractor will stipulate concerning adherence to the MacBride Fair Employment Principles, as prescribed by Chapter 807 of the Laws of 1992. Section 174-B of the State Finance Law requires that before entering into certain State contracts, persons or entities stipulate that they either (1) have no business operations in Northern Ireland or (2), if so engaged, will conduct such operations in accordance with the MacBride Fair Employment Principles.

For contracts competitively bid, if the lowest responsible bidder fails to stipulate as required by Section 174-B, and another bidder, whose bid price for goods, services or construction of comparable quality is within five percent of the lowest bid, has so stipulated, the contracting entity shall refer such bids to the Office of General Services. The purpose of such referral is a determination by the Commissioner of General Services whether it is in the best interests of the State to reject the low bid and to award the contract to another qualifying bidder.

XIII.       Pursuant to Section 167-B of the State

April 1, 1993                    Page 5 of 6

Finance Law, unless otherwise exempted, any bid, proposal or other response to a solicitation for bid or proposal which proposes or calls for the use of any tropical hardwood or other tropical wood product in performance of the contract shall be deemed non-responsive.

XIV.   In the event of a conflict between the terms of this Appendix B and the terms of the contract (including any and all attachments thereto and amendments thereof, but not including Appendix A), the terms of this Appendix B shall control. In the event of a conflict between the terms of this Appendix B and Appendix A, the terms of Appendix A shall control.

April 1, 1993                                Page 6 of 6

SAD 036846

Rider to
Appendix B

Standard Clauses for All
New York State Department of
Environmental Conservation
Contracts

The parties to this contract hereby agree that clause II of this Appendix is hereby revised to read as follows:

II. The Municipality agrees that it will indemnify and save harmless the Department and the State of New York from and against all losses from claims, demands, payments, suits, actions, recoveries and judgments, of every nature and, description brought or recovered against it by reason of any acts or omissions of the Municipality, its agents, employees, contractors or subcontractors in the performance of this contract which are shown to have been the result of negligence, gross negligence or reckless, wanton or intentional misconduct.

Dated: _____
(Fiscal Management)
4/7/0?

Department of Environmental
Conservation

Dated: _Juy 14 1998_

By: _____
Town Supervisor
Town of Hempstead

On this _14_ day of _July_, 1998, before me personally came _Richard V. Guardino Jr._ to me known, who being duly sworn, did depose and say that (s)he is the Supervisor of the Town of Hempstead, the political subdivision or agency thereof described and in and which executed the above instrument; that (s)he knows the seal of said political subdivision; that the seal affixed to said instrument is such seal; that it was so affixed by order, resolution or authority of the Town Board of said political subdivision and that (s)he signed his name by that authority.

_Theresa M. Haller_
Notary Public

APPROVED AS TO CONTENT
_____
COMMISSIONER
WATER DEPARTMENT
DATE 7/3/98

THERESA M. HALLER
NOTARY PUBLIC, State of New York
No. 4626141
Qualified in Nassau County
Commission Expires February 28, 1999

Approved .. as .. to .. Form
_P. Rill_
Senior Deputy Town Attorney
Dated _7/7_ 1998

SAD 036847